IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. 04-47 |
| --- | --- | --- |
| v. | : | |
| YUSEF HOWARD | : | CIVIL ACTION NO. 11-6352 |

**MEMORANDUM**

**Padova, J.**                                                                                                          **November 5, 2013**

Yusuf Howard filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (the "§ 2255 Motion"). We held an evidentiary hearing on the Motion on September 11, 2013. For the following reasons, we deny the § 2255 Motion.

**I.     BACKGROUND**

The February 3, 2004 Indictment in this case charged Howard with possession with intent to deliver cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Count I); carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count II); and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(e) (Count III). On April 23, 2004, after a jury trial, at which Howard was represented by Scott Godshall, Esq., Howard was convicted of all charges. At sentencing, Howard was found to have a total offense level of 34 due to his status as an armed career criminal. (N.T. 9/9/04, at 13.) That offense level, combined with his Criminal History Category of VI, gave rise to an advisory Guidelines range of 262-327 months of imprisonment, and with the addition of the mandatory 60-month consecutive sentence under § 924(c), his effective advisory Guidelines range was 322-387 months. We sentenced Howard on September 9, 2004, to total term of imprisonment of 322 months, consisting of 240 months for the drug offense in Count I, a concurrent term of 262

months for the felon in possession charge in Count III, and a consecutive term of 60 months for the § 924(c)(1) firearm charge in Count II.

Howard appealed to the United States Court of Appeals for the Third Circuit, which affirmed his conviction, but remanded the matter for resentencing in accordance with United States v. Booker, 543 U.S. 220 (2005). United States v. Howard, 248 F. App'x 437, 439-40 (3d Cir. 2007). On December 10, 2007, in connection with the resentencing, we appointed Frances Alperin Shapiro, Esq. as new counsel for Howard. We resentenced Howard on October 1, 2008. Although Howard's advisory Guidelines range remained the same, we resentenced Howard to a total term of imprisonment of just 240 months, consisting of 70 months for the drug offense in Count I, a mandatory concurrent term of 180 months for the felon in possession charge in Count III, see 18 U.S.C. § 924(e) (setting forth a fifteen-year mandatory minimum for an armed career criminal who violates 18 U.S.C. § 922(g)), and a mandatory consecutive term of 60 months for the firearm charge in Count II, see 18 U.S.C. § 924(c). Howard again appealed his sentence. The Third Circuit affirmed the amended judgment of sentence on March 11, 2010. Howard then filed a Petition for a Writ of Certiorari with the United States Supreme Court. The Supreme Court denied that Petition on October 4, 2010. Howard v. United States, 131 S. Ct. 239 (2010).

Howard filed a § 2255 Motion in October of 2011, and filed an Amended Motion on December 2, 2011. In the Amended Motion, Howard asserts four grounds for relief. In the first and second grounds for relief, Howard claims that trial counsel was ineffective insofar as he misadvised Howard that the maximum sentence Howard would receive after trial was 165 months and, as a result, failed to give informed and intelligent advice regarding Howard's guilty plea options. As his third ground for relief, Howard argues that his sentencing counsel was ineffective

2

for failing to challenge his designation as an armed career criminal. In his fourth ground for relief, Howard claims that his sentencing counsel was ineffective for failing to object to the calculation of Howard's criminal history points.

In June of 2012, the Government filed a response in opposition to the Motion, in which it argued only that Howard's Motion was untimely. On September 28, 2012, we issued an Order requiring the Government to address the applicability of the prison mailbox rule and also to address Howard's claims on their merits. The Government filed its supplemental memorandum on March 11, 2013.

On May 7, 2013, we appointed counsel to represent Howard and scheduled an evidentiary hearing. On September 3, 2013, Howard's counsel filed a supplemental memorandum in support of Howard's § 2255 Motion. We held an evidentiary hearing on the Motion on September 11, 2013. At that hearing, the parties advised the Court that the timeliness issue was "off the table," and therefore addressed only the merits of Howard's Motion. (N.T. 9/11/13, at 2.)

## II. LEGAL STANDARD

Howard has moved for relief pursuant to 28 U.S.C. § 2255, which provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "'Section 2255 does not provide habeas petitioners with a panacea for all alleged trial or sentencing errors.'" United States v. Perkins, Crim. A. No. 03-202, Civ. A. No.

3

07-3371, 2008 WL 399336, at *1 (E.D. Pa. Feb. 14, 2008) (quoting United States v. Rishell, Crim. A. No. 97-294-1, Civ. A. No. 01-486, 2002 WL 4638, at *1 (E.D. Pa. Dec. 21, 2001)). In order to prevail on a § 2255 motion, the movant's claimed errors of law must be constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962).

Howard's claims are all based on alleged ineffective assistance of counsel. In order to prevail on a claim for ineffective assistance of counsel, a criminal defendant must demonstrate both that (1) his attorney's performance was deficient, i.e., that the performance was unreasonable under prevailing professional standards, and (2) that he was prejudiced by the attorney's performance. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." Id. at 688. Prejudice is proven if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. It "does not require certainty or even a preponderance of the evidence that the outcome would have been different with effective assistance of counsel; it requires only a reasonable probability" which is a "relatively low standard." Boyd v. Waymart, 579 F.3d 330, 354 (3d Cir. 2009) (quotation omitted). On the other hand, counsel cannot be found to be ineffective for failing to pursue a meritless claim. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a

4

meritless argument." (citations omitted)); see also Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998).

## II. DISCUSSION

### A. Misinformation regarding Sentencing Exposure and Plea Options

#### 1. Deficient performance

According to Howard, trial counsel's performance was constitutionally deficient insofar as he advised Howard that his maximum sentencing exposure was 165 months when, in fact, Howard faced a much higher sentence due to his status as an armed career criminal, receiving a 322 month sentence at his first sentencing and a 240 month sentence at his second sentencing. Howard also asserts that counsel was ineffective insofar as he "failed to explain the potential sentencing reductions associated with a cooperation agreement and the entry of a guilty plea." (Suppl. Mem. at 2.)

As noted above, in order to establish that counsel's performance was deficient, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. This right to effective assistance of counsel includes the right to effective representation during plea bargaining. See Missouri v. Frye, 132 S. Ct. 1399, 1405-06 (discussing Hill v. Lockhart, 474 U.S. 52 (1985), and Padilla v. Kentucky, 559 U.S. 356 (2010)); United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992) (citation omitted). Notably, the Third Circuit has declined to "state precisely what standard defense counsel must meet when advising their clients about the desirability of a plea bargain and, concomitantly, about sentence exposure." Day, 969 F.2d at 43. However, it has made clear that "familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation."

Id. (footnote omitted); see also Riggs v. Fairman, 399 F.3d 1179, 1183 (9th Cir. 2005) (counsel's failure to determine that defendant faced a sentence of 25 years to life as a career offender fell below an objective standard of reasonableness); United States v. Marcos-Quiroga, 478 F. Supp. 2d 1114, 1138-39 (N.D. Iowa 2007) (concluding that requirement of objectively reasonable professional conduct was not met where counsel did not properly evaluate defendant's career offender potential and provide an accurate assessment of sentencing exposure)). This is because "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty. Day, 969 F.2d at 43 (citations omitted).

Howard testified at our September 11 hearing that, when he asked Mr. Godshall what Guidelines sentence he faced, Mr. Godshall told him that he faced a maximum of 105 months on the crack cocaine offense, and an additional 60 months on the gun offense, for a total of 165 months. (N.T. 9/11/13, at 43-44.) According to Howard, Mr. Godshall never explained anything about the Armed Career Criminal Act, and never advised him that, because of certain prior convictions that qualified him as an armed career criminal, he might be required to serve a mandatory minimum sentence of fifteen years. (Id. at 44.) Howard further testified that he never discussed with Mr. Godshall the advantages of entering a guilty plea. (Id.) Likewise, Howard testified that he did not know what a cooperation agreement was, and that Mr. Godshall never told him that, if he provided the Government with substantial assistance, the Government could move for a downward departure that could free him from the mandatory minimum sentences that he faced. (Id. at 44-45.)

6

In contrast, Mr. Godshall testified at the hearing that he did not specifically recall representing Howard and had not retained his case file in the matter. (Id. at 6-7.) He further testified that he had no memory of the Guidelines range that he told Howard that he faced or of discussing a cooperation agreement with Howard. (Id. at 8.) Mr. Godshall also testified, however, that at the time he represented Mr. Howard, he had been practicing law in the federal courts for almost twenty years and had been engaged in a federal criminal practice for approximately fifteen years. (Id. at 9-10.) He characterized his practice at the time as a "guidelines practice," meaning that it was "all about the guidelines," which at the time were mandatory. (Id. at 10-11.) Thus, he testified that the Guidelines "were the beginning of any conversation with a federal criminal defendant" and that this was especially true in drug cases such as Howard's, where the volume of drugs drove particularly long sentences. (Id. at 12.)

According to Mr. Godshall, it was his standard practice in 2004, when he was representing Howard, to meet with each client shortly after the client's initial appearance before the magistrate, and to talk to the client about the Sentencing Guidelines at that meeting. (Id. at 14.) In his first meeting with the client, Mr. Godshall would explain to the client the severity of the federal Guidelines sentencing ranges, and would further explain that, practically speaking, the only "outlet" where a conviction is likely was a cooperation agreement. (Id. at 10, 14-15.) Mr. Godshall testified that, at the time he represented Howard, he was familiar with the Armed Career Criminal Statute, and knew that, under the statute, a defendant who qualified as an armed career criminal would be assigned a criminal history category of VI and an offense level of 34. (Id. at 23-24.) According to Mr. Godshall, it is "inconceivable" that he would fail to identify a client who qualified as an armed career criminal. (Id. at 24.) Mr. Godshall further testified that,

7

although he had no specific recollection of Howard's case, he was "confident" that he told Howard he had to consider a proffer with the federal government. (Id. at 18-19.)

If we were to credit Howard's testimony that Mr. Godshall misinformed him that he was facing only 165 months in prison and also failed to advise him of the potential benefits of entering into a cooperation agreement, we would not hesitate to conclude that Mr. Godshall's performance fell below an objective standard of reasonableness. See Day, 969 F.2d at 43. We do not, however, credit Howard's testimony in this regard. As an initial matter, we simply do not believe that, if Mr. Godshall had told Howard that he was only facing 165 months in prison, Howard would have failed to mention this fact at one of his two sentencing hearings or in one of his two appeals, rather than waiting until he filed his habeas motion over seven years after his first sentencing. (See, e.g., N.T. 9/11/13, at 56-57, 61-62, 64.) Moreover, we find Mr. Godshall's testimony regarding his usual practices to be credible and find it to circumstantially support the conclusion that he, consistent with his usual practice, advised Howard regarding his sentencing exposure as an armed career criminal and counseled him that his only "outlet" was to enter into a cooperating plea agreement. (Id. at 15; see also id. at 23-24.) We therefore conclude, based on the evidence at the September 11 hearing, that Howard has failed to establish that Mr. Godshall's conduct fell below an objective standard of reasonableness.

      2.     Prejudice

Even if we were to credit Howard's testimony and thereby conclude that Mr. Godshall's performance was constitutionally deficient, we would not find that Mr. Godshall was ineffective because Howard has failed to establish that Mr. Godshall's alleged conduct caused him any prejudice. In order to show prejudice in this context, Howard must establish that is it reasonably

8

probable (1) that he would have pled guilty had he known of the true sentence he faced and (2) that "a guilty plea would have reduced his sentence." See United States v. Moore, 416 F. App'x. 454, 460 (5th Cir. 2011); see also Day, 969 F.2d at 45 n.8 (noting that defendant must prove that there is a reasonable probability that he would have pled guilty, that the district court would accept the plea arrangement, and that defendant would have therefore received a lesser sentence). In other words, Howard must establish that it is reasonably probable that he would have pled guilty had he known that he faced a mandatory Guidelines sentence of 322-387 months as an armed career criminal, and that the Government would have offered him, and he would have accepted, a cooperation agreement that would have resulted in a lesser sentence than the 240 months to which he was ultimately sentenced.[1]

Howard testified at our September 11 hearing that he would not have gone to trial if he had known that he would face a mandatory Guidelines sentence of close to thirty years. (N.T. 9/11/13, at 45.) According to Howard, if Mr. Godshall had told him that he could remove his case from a mandatory sentencing posture by cooperating, he "probably" would have been persuaded to cooperate with the Government, "if [he] had anything" to share. (Id. at 45-46; see also Howard 10/4/11 Aff. ¶¶ 4-5 (stating that "had [he] been correctly advi[sed] by his counsel, he would ha[ve] tr[ied] to work out [a] plea deal with the U.S. Attorney," and would have plead guilty)). Howard acknowledged on direct examination that he had drugs and a gun on his person when he was arrested in this case, and that he was involved in other drug cases when he "was . . . a young man."

---

[1] Howard's habeas counsel concedes that Howard's only opportunity to obtain a sentence below 240 months was by cooperating, in light of the mandatory minimum sentences for Howard's crimes. (See N.T. 9/11/13, at 66 (abandoning any argument that an open plea would have resulted in a reduced sentence).)

9

(N.T. 9/11/13, at 46.) He thus suggested that he could have provided substantial assistance to the Government by sharing where he had obtained the drugs and the gun. (Id. at 46-47.)

This limited evidence does not establish that it is reasonably probable that Howard would have been able to obtain a cooperation agreement that would have reduced his sentence. First, Howard's testimony that he "probably" would have been persuaded to cooperate is equivocal and underwhelming. (Id. at 45.) Second, Howard has presented no evidence that the Government ever contemplated offering him a cooperation agreement, much less that it did offer him such an arrangement. Third, it is highly doubtful that Howard's supposed information as to where he obtained the gun and the 3.618 grams of crack cocaine that he possessed at the time of his arrest, and where he obtained drugs "as . . . a young man," would have qualified as "substantial assistance in the investigation and prosecution of another" that would have resulted in a motion to depart from the recommended Guidelines sentencing range under U.S.S.G. § 5K1.1 and from the statutory mandatory minimums pursuant to 18 U.S.C. § 3553(e). U.S.S.G. § 5K1.1. Indeed, Howard provides no detail regarding this supposed information. Accordingly, we cannot possibly find that there is a reasonable probability that any information he could have provided would have been significant, useful, complete, truthful and reliable. See id. § 5K1.1(a). We thus find no reasonable probability that any information Howard could have shared would have been sufficient to motivate the Government to file a motion pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), or for us to grant such a motion, had it been filed.

Under these circumstances, we conclude that Howard has not adequately established that he was prejudiced by any action of his counsel in misadvising him as to the sentence he would face if he went to trial and was found guilty, and in failing to advise him as to the potential benefits of a

10

cooperating plea agreement. Consequently, for this reason and because we conclude that Howard has not established that his trial counsel's performance was deficient, we deny Howard's first two claims for relief. We therefore dismiss Howard's Motion with respect to these claims for relief.

### B. Armed Career Criminal Designation

Howard argues that his sentencing counsel was ineffective in failing to argue at sentencing and on appeal that two of his three prior state court convictions were not convictions for "serious drug offense[s]" that could provide the basis for an imposition of a sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e). Under 18 U.S.C. § 924(e)(1), an individual will be designated an "armed career criminal" if he is convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and, at the time of his conviction, he has at least three prior convictions for either a "violent felony" or a "serious drug offense," or both, all three of which crimes were committed on occasions different from one another. See 18 U.S.C. § 924(e)(1). The armed career criminal designation results in a mandatory minimum sentence of 180 months for the § 922(g) offense. Id.

Howard's presentence report identifies three prior convictions for violent felonies or serious drug offenses, which provided the basis for the armed career criminal designation. Howard does not questions the first, a December 11, 1997 conviction in the Court of Common Pleas of Philadelphia County ("Philadelphia CCP") for manufacture/delivery/possession with intent to manufacture or deliver a controlled substance, and carrying a firearm on a public street, which arose out of an incident occurring on August 13, 1997. He argues, however, that two additional convictions were not valid predicate offenses for the armed career criminal designation. The first of these two was a December 11, 1997 conviction in the Philadelphia CCP for

11

manufacture/delivery/possession with intent to manufacture or deliver a controlled substance, which arose out of an incident occurring on February 18, 1997. The second of the two was a July 17, 2002 conviction in the Philadelphia CCP for manufacture/delivery/possession with intent to manufacture or deliver a controlled substance, which arose out of an incident occurring on August 27, 2001. Howard maintains that these latter two convictions were not convictions of "serious drug offenses" under the statute because each only carried a mandatory minimum of one year.

Howard, however, misunderstands the statutory definition of "serious drug offense," which hinges not on the mandatory minimum that a crime carries but, rather, on the maximum sentence for the crime. Under 18 U.S.C. § 924(e), a "serious drug offense" is "an offense under State law, involving manufacturing, distributing, or possessions with intent to manufacture or distribute, a controlled substance . . . <u>for which a maximum term of imprisonment of ten years or more is prescribed by law</u>." 18 U.S.C. § 924(e)(ii) (emphasis added). The convictions at issue were for violations of Pennsylvania's Controlled Substance Act, which criminalizes as a felony offense the manufacture, delivery or possession with intent to manufacture or deliver a controlled substance, and provides that each offense is punishable by a sentence of up to fifteen years' imprisonment. 35 Pa. Stat. §§ 780-113(a)(30), (f)(1).

Because the challenged predicate offenses carried maximum terms of imprisonment of fifteen years, the offenses were properly considered "serious drug offense[s]" under § 924(e). Accordingly, Howard's counsel could not have made a meritorious argument that the two challenged convictions were not punishable by a term of imprisonment of ten years or more and, thus, were not serious drug offenses under the Armed Career Criminal Act. Howard therefore cannot establish that he has been prejudiced by counsels' failure to make that argument either at

sentencing or on appeal. See Sanders, 165 F.3d at 253 (stating that counsel cannot be found ineffective for failing to raise a meritless claim). We therefore dismiss Howard's Motion with respect to this claim for relief.

### C. Criminal History Points

In his fourth claim, Howard argues that his counsel was ineffective for failing to object to "extra, and unwarranted criminal history points in connection with his prior drug trafficking convictions." (Am. Mot. at 26.) According to Howard, he should not have received six criminal history points for two drug trafficking crimes for which he was sentenced on the same day.

Howard was, in fact, sentenced for two separate drug offenses on December 11, 1997.[2] The first arose out of a February 18, 1997 arrest for the delivery and sale of two packets of crack cocaine to an undercover police officer. Howard pled guilty to that offense on September 24, 1997. The second sentence arose out of an August 13, 1997 arrest for Howard's delivery and sale of two packets of crack cocaine to an undercover police officer. Howard pled guilty to that offense on December 11, 1997, the same day that he was sentenced for both drug offenses. He received a sentence of 1-2 years of imprisonment for the conviction arising out of the February 18, 1997 arrest, and another, separate sentence of 1-2 years imprisonment for the conviction arising out of the August 13, 1997 arrest. The two sentences were ordered to run consecutively to one another.

Under § 4A1.1(a) of the Guidelines, a defendant receives three criminal history points for each prior sentence of imprisonment exceeding one year and one month. U.S.S.G. § 4A1.1(a).

---

[2] The state court records in connection with these convictions are attached to the Government's September 7, 2004 Sentencing Memorandum, which was filed in connection with Howard's September 4, 2004 sentencing. We draw the information regarding the two convictions from those state court records.

At the time of Howard's initial sentencing in this case in 2004, the Guidelines provided that prior sentences in related cases were to be treated as one sentence for purposes of assessing criminal history points under § 4A1.1(a), and allowed for certain sentences to be considered related if they had been consolidated for sentencing. See U.S.S.G. § 4A1.2(a)(2), and cmt. n.3 (2003). However, they also made clear that "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." Id. § 4A1.2, cmt. n.3 (2003) (emphasis added). Similarly, under the Guidelines in effect at the time of Howard's resentencing in 2008, U.S.S.G.§ 4A1.1(a)(2) provided that where a defendant had multiple prior sentences, they were to be counted separately for purposes of assessing criminal history points if they are "imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense.)" U.S.S.G. § 4A1.2(a)(2) (2007).

Here, Howard's two drug offenses at issue, although consolidated for sentencing, were plainly separated by an intervening arrest, because he was arrested for his February 18, 1997 conduct months before he committed the criminal conduct on August 13, 1997. Accordingly, under the Guidelines in effect at both the 2004 and 2008 sentencings, he was properly assessed three criminal history points for each of the two drug offenses for which he was sentenced on December 11, 1997, and his argument that his counsel was ineffective for failing to argue to the contrary is meritless. See Sanders, 165 F.3d at 253 (stating that counsel cannot be found ineffective for failing to raise a meritless claim).

It is also worth noting, in connection with the prejudice prong of Strickland analysis, that the number of criminal history points that Howard was assessed did not ultimately affect his

14

criminal history category, because Howard was deemed an armed career criminal. Pursuant to U.S.S.G. § 4B1.4(c), the criminal history category for an armed career criminal is "the greatest of":

    (1)    the criminal history category from Chapter Four, Part A (Criminal History), or § 4B1.1(Career Offender) if applicable; or

    (2)    Category VI, if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence, as defined in § 4B1.2(b) or a controlled substance offense, as defined in § 4B1.2(b), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a); or

    (3)    Category IV.

U.S.S.G § 4B1.4(c). In this case, Howard was charged with, and convicted of, possession with intent to deliver cocaine base, as well as carrying a firearm during and in relation to that drug trafficking crime. Thus, under § 4B1.4(c)(2), he was assigned a Criminal History Category of VI, irrespective of the computation of his criminal history points under Chapter Four, Part A. For this reason, as well as that set forth above, Howard's argument that counsel was ineffective for failing to object to the computation of his criminal history points fails, as he plainly suffered no prejudice from counsel's failure to raise that objection. We therefore deny Howard's Motion with respect to this claim for relief.

## V. CONCLUSION

For the foregoing reasons, we deny Howard's § 2255 Motion in its entirety. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.